The last case on for argument is Thomas v. New York City Department of Education and Steven Koss. Good morning, Mr. Thomas. Good morning, Your Honors. My name is Michael Thomas. I'm the Plaintiff Appellant. May it please the Court. First, I want to acknowledge that my conspiracy claim does not revive those claims for which I previously had a complete cause of action. Therefore, my claims against Mr. Salek are untimely. My claims against the DOE, Undo Monell, are untimely. And also, my claims against Jimenez and Kwan regarding their false allegations in the request for the psych exam are also untimely. I do have a timely cause of action for those wrongful acts of defendants that furthered or concealed the conspiracy. The cause of action for those acts accrued in July 2015 when I first became aware of them. I think certainly my cause of action against Koss accrued in July 2015. I could not bring an action under Section 1983 against Koss, a private actor, unless I could somehow demonstrate that he collaborated with the state actor In order to establish that he conspired with either Jimenez or Kwan, I had to provide some factual basis supporting a meeting of the minds. I only knew in 2008, after I received a request for the psych exam, that the PTA executive board had written a letter complaining about my Title I activities. There was nothing in the request for the psych exam that suggested that Koss had conspired with Jimenez or Kwan when he wrote the letter. When did you get the copy of the March 14th letter? March 14th letter? That was in 2015, July 2015. You didn't have that before then? No, Your Honor. The letter from the board? The letter from the board, yes, Your Honor. I had tried for about six years to try to obtain a copy of that letter, but I was unable to until July 2015. So in 2008, the only thing I knew was that they had written a letter complaining about my activities. In 2010, I finally obtained a copy of the OSI investigative report in which Koss alleged in the PTA letter that I had lowered students' scores improperly on the regents' exams. But again, nothing in that investigative report suggested that Koss, in writing the PTA letter, had conspired with Jimenez or Kwan. In fact, I was told by SCI in 2011 that there was nothing to substantiate that Jimenez or Kwan or any DOE employee acted improperly with respect to the PTA letter. They say that you acknowledged that you were aware of the PTA letter in March of 2008. That's just incorrect? In March 2008, I was aware only with respect to how it was cited in the psych exam, the request for the psych exam. All it said about the letter is that the PTA executive board had written a letter, and in that letter they had complained about my Title I activities. There was no mention of filing allegations that I had lowered scores on the regents' exams or anything to that extent. They also say that you acknowledged that you were aware of the PTA's allegations when you were interviewed by OSI in October 2008. That's inaccurate? I was only aware that Mr. Koss had filed allegations that I had lowered the regents' scores on the regents' exam. I had no basis, no knowledge of what he based that on. That was a claim, though, right? That was a claim, but in the investigative report for OSI, Mr. Koss does not admit that he had a three-way phone conversation with Kwan and Jimenez, in which they falsely told him that I lowered the scores on the regents'. What Mr. Koss said to OSI during the investigation was that he based his allegations on my efforts to regain lost Title I funding and hearsay about my stringent scoring policies. He did not mention anything in the investigation, in the interview with OSI, that Kwan and Jimenez had advised him that I falsely lowered scores on the regents' exams. So the only time I really had a complete knowledge of what had occurred was when I received the PTA letter and also Koss's sworn statement in July 2015. Now, there have been adjudications not in your favor on your claims relating to the impact of the letter and these other actions. That's what you were referring to as claims that would not be revived by the conspiracy claim, correct? Yes, Your Honor. I would not say that I actually had any proceedings prior in court relating to my actual claims. What I had challenged in court was SCI's determination, but that was basically asking the court to determine that SCI's determination was arbitrary and capricious or an error of law. That determination was upheld as final and as not violative of your rights. Yes, Your Honor, but the court in that proceeding never ruled on my retaliation claims. It just merely agreed with SCI that I had not followed the reporting criteria as outlined in the whistleblower law. Thank you.  Thank you, Your Honor. I have a few minutes to rebut. Thank you. Yes. Do you have any questions? You have reserved three minutes for rebuttal, Mr. Thomas, so thank you very much. Ms. Montcalm, are you arguing first? Yes, Your Honor. May it please the court. My name is Megan Montcalm. I represent the city of Appalachia. I understand from Mr. Thomas' representation today that he's no longer pursuing his claims against Jimenez, Kwan, and Salek in the DOE arising from the events of 2008. That was the basis of his complaint here, that the wrong he suffered was his temporary removal from the classroom in April 2008. He alleged that was in retaliation for his speech about Title I funding throughout the prior school years. As we argued in our brief on the basis of the proceedings below and the representations that Mr. Thomas made in his complaint about his claims, those claims are time barred and they should not proceed any further. With respect to any claims against Condon or Conroy arising from their investigation of his applications for whistleblower protection, Mr. Thomas previously filed a 1983 lawsuit in federal court against Condon in his official capacity challenging the conduct of those investigations. And Judge Furman resolved that on the merits in July of 2015. So under the doctrine of raised judicata, Mr. Thomas is precluded from now filing any further claims against Condon and Conroy arising out of that same transaction, their resolution of those applications for whistleblower protection. Insofar as Mr. Thomas in his briefing on appeal is suggesting that he's raised a Minnell claim against SCI, that claim is similarly precluded by the doctrine of raised judicata because of that prior federal lawsuit. He made the same allegation in that earlier complaint that SCI has an alleged custom or policy of denying whistleblower protection applications. That was his opportunity to pursue that claim. And that case was resolved on the merits with a final judgment. Furthermore, the Minnell claim also would be barred by the three-year statute of limitations. That second application for whistleblower protection was resolved in November of 2011, four years before he filed this lawsuit. And that's why the three-year statute of limitations bars it. And if there are no questions from the panel, we'd ask this court to affirm the lower court's dismissal of the amended complaint. Thank you. Thank you, Ms. Monkholm. Good morning, Your Honors. John Crossman for Stephen Koss. I guess I get the pleasure of being the last lawyer of the last argument of the day. Mr. Thomas is going to come behind you, so. Very well. Although he's not a lawyer, but although he does a good brief. Lawyering his own case today. That was a nice brief. Some of you may be wondering why Mr. Koss even needs his own lawyer in this case, and I just want to make sure there's no misunderstanding. The reason is Mr. Koss has the distinct distinction of being the only person in this case who was never paid for anything he did with respect to this case. Mr. Koss was a volunteer who had a child at this school, and so he volunteered to be the PTA president, try to help the school, like we all hope parents will do. He didn't get paid for that. It was a strictly volunteer position, and when this lawsuit came up and Mr. Koss went to the city and said, Will the law department represent me since I was working for the PTA at the time? The law department said, No, because you're not an employee of the city. You're simply not eligible. So the only reason that I'm here is because Mr. Koss, as a thank you for his volunteer service, now has to pay me to come here and answer these charges from nine years ago. Now, in terms of the actual merits of the appeal, I think Mr. Thomas has admitted everything this court needs to know. He admits that he knew back in 2008 that my client and the principal were good friends. He actually says it was a terrible mistake when he reached out to Mr. Koss because they were good friends. He knew that well in advance. He knew that Mr. Koss had written with the board, the PTA board, had written a letter to that principal, his good friend. He knew that that letter resulted after Mr. Thomas, on his own, went and found Mr. Koss and affirmatively asked Mr. Koss, tapped him on the shoulder and said, Would you please intercede with the school on my behalf about this issue? When did he get a copy of the letter? I'm sorry? When did he get a copy of the letter? I think he got it in 2015. So there's no question he got the letter later, but he knew that the letter had been sent. He knew the tenor of the letter. Did he know the claims in the letter? When did he know those? He believed that there had been a conspiracy in 2010. He says that in his brief, in his reply. He believed in 2010 that there had been a conspiracy. His excuse for not filing suit at that point in time is, Well, I didn't think I'd be able to prove it at trial. But he didn't bring a complaint and say, I need pre-discovery or anything like that. He just said, I didn't have enough at the time. Now, of course, that begs the question, if we look at the letter, there's nothing in the letter that in any way suggests any kind of conspiracy. To the contrary, the letter says, Dear Principal, if there's anything we don't understand factually that's correct, if we're off base, if we misunderstand something, please correct us. OK, so it's not a conspiracy where Mr. Koss is affirmatively trying to somehow tell a lie. He's saying this is what we've learned as the PTA board. This is what we've heard. This is what we believe is true. But you folks at the school know a lot more than we. If there's something wrong here, please tell us. Now, Mr. Thomas, in his reply brief, sort of did a different tone, though, in the email from shortly before the letter, right? I'm sorry. Say that again, Your Honor. Yeah. There's an email February 29, 2008. It's a 225 that preceded the kind of formal letter of the PTA. Remember that? I remember that. Yes, Your Honor. The tone of it's a little bit different. It's more accusatory, isn't it? Well, there are definitely accusations going on, but that's the point, is the PTA was accusing Mr. Thomas of having done things. That's not anything like the principal saying, oh, PTA, please create a false letter masquerading as a complaint so that I can then do something to this teacher. It's quite the opposite. It's the PTA saying, hey, Mr. Thomas has voluntarily sent us hundreds of pages of documents that we did not ask for and did not ask to review, and we have reviewed them. And this is what we found as a result. Could you do something about this? And that's what led to the letter. But the letter doesn't say anything in it about a meeting of the minds or agreeing to do something. And Mr. Thomas has also acknowledged that he has not alleged that Mr. Koss was, quote-unquote, in on it. You know, Mr. Thomas has always said the principal and the assistant principal were out to get him. They were making up allegations about him. And that's been the gist of what he's been saying. But he alleges that the principal told those allegations to the PTA, to Mr. Koss, not that he told the PTA that the allegations were false. So if anything, Mr. Koss was simply misled. If there was a false statement somewhere that somehow impacted Mr. Thomas, Mr. Koss was misled by the school authorities as much as anyone. And there's just no reason, there's no allegation in the complaint and there's no fact in the record that would support any finding that Mr. Koss in any way conspired with anyone at the school, much less that there was any kind of meeting of the minds. There's only these written documents which say, this is what we, the PTA Board, have heard. It appears to be true. But if it's not true, please tell us what's wrong with this. And then please take whatever action is appropriate, consistent with the Chancellor's regulations and the other regulations. So it's just what we would all expect our PTA presidents, our friends who are volunteer parents trying to do right by our kids. They're just doing what you would want them to do. And I would just ask this Court, please don't do anything that's going to make it harder to get PTA representatives to serve in these positions. In the absence of evidence that anything was done wrong, I'm out of time, I should stop. Thank you very much. Thank you. Thank you, Mr. Crossman. And Mr. Thomas, you have reserved three minutes, as I said earlier. Thank you, Your Honor. I think what's important to remember here is that Mr. Koss was a volunteer PTA president, but he was not a parent who was unfamiliar with the workings of the school system. Mr. Koss himself had been a math teacher for approximately seven or eight years, and by his own admission in his statements to SCI, stated that he had graded Regents exams for many, many years. He is well aware of the procedures regarding Regents exams. He knew full well that it was the principal's responsibility to protect the integrity of the exam. He should have known two months after the exams were given, when the principal requested Mr. Jimenez, I'm sorry, Mr. Koss to write the letter, he should have known that it was the principal's responsibility, if anything had happened during the grade of the Regents, to bring that to the attention of the Department of Education. And it was not the parent teacher's association's president's responsibility to write a letter at the principal's request saying that these events had occurred. So, do I misunderstand that those documents that the PTA was looking at had been sent by you to them? They were sent to me on February 27th in response to a communication I had with Mr. Koss regarding a different matter. It was basically, the documentation I sent was just regarding my activities regarding Title I, where I was trying to show that I was trying to make our targeted assistance program more effective. It had nothing to do with the grading of the Regents or anything like that. But I had merely submitted some documentation because there had been some friction between the PTA and the teachers, and I was just trying to show that basically we all were in agreement, it was just miscommunication. Okay? My cause of action essentially is for the conspiracy between Koss, Jimenez, and Kwan for filing this false allegation, which essentially had me removed. Again, Jimenez and Kwan provided Koss with the allegations, but it was at Jimenez's request that Koss actually wrote this letter to Jimenez, which Jimenez then used as a grounds to have me removed. Mr. Koss never did acknowledge that he was told by Mr. Jimenez and Mr. Kwan that they alleged that I had falsely scored the Regents' exams, which is certainly what he would have done. Not doing so certainly, to me, shows consciousness of guilt. Regarding my claims against SCI, the previous lawsuit I filed against SCI was essentially alleging that they had conducted an inadequate investigation. When I received the materials in July 2015, it became clear that they had not performed an inadequate investigation. Their investigation was actually very thorough, except that they concealed the results. All right? So there's two totally different claims. Previously, the lawsuit said that it was a totally inadequate investigation. Now I'm saying that it was a good investigation, but they concealed their findings, which deprived me from my cause of action. This is timely because my previous lawsuit ended, I believe, on July 10, 2015. I did not receive the materials here until July 17, 2015. Thank you very much. Thank you. Thank you. All three of you will reserve decision in this matter. The final case, Hill v. Colvin, is on submission. I'll ask the clerk please to adjourn the court. Court is adjourned.